■ HENRY NEAL CONOLLY, Appellant, v DALE M. THUILLEZ et al., Individually and Doing Business as THUILLEZ, FORD, GOLD & JOHNSON, LLP, Respondents. [871 NYS2d 476]—

Rose, J. Appeals (1) from an order of the Supreme Court (McNamara, J.), entered January 25, 2008 in Albany County, upon a decision of the court in favor of defendants, and (2) from the judgment entered thereon.

Plaintiff left the law partnership of Thuillez, Ford, Gold & Conolly, LLP to take the position of Executive Director of the State Insurance Fund in early 1997. Thereafter, defendants, who are plaintiff's former partners, were retained to litigate certain claims against tobacco companies. Four years later, plaintiff learned that defendants had been awarded a multimillion dollar contingency fee in the tobacco litigation, and he sought a share of it. When they rebuffed him, he commenced this action seeking to recover the value of his interest in the dissolved partnership and, implicitly, a share of the tobacco litigation fee. Defendants asserted that plaintiff had expressly agreed to accept $150,000 as full payment for his ownership interest in the firm's equity and that this amount was paid to him. On defendants' appeal from Supreme Court's partial denial of their motion for summary judgment, this Court dismissed plaintiff's claim to a share of the tobacco litigation fee because

it was not a pending case when he left the firm and found a question of fact as to the existence of the buyout agreement alleged by defendants (26 AD3d 720 [2006]). Following a nonjury trial, Supreme Court resolved that question in defendants' favor and plaintiff appeals.

Plaintiff argues that defendants did not meet their burden of proving the existence of a buyout agreement and that Supreme Court's finding of such an agreement is against the weight of the evidence. We disagree. At trial, defendant Dale M. Thuillez, the firm's managing partner, testified that during a discussion in early 1997, after plaintiff announced his planned departure from the firm, Thuillez offered to pay him $150,000 as the fair value of his equity interest and he replied, "Yes, I agree." Thuillez also testified that they had agreed that the firm would pay plaintiff over a three-year period, as had been arranged with another retiring partner. As to the valuation of plaintiff's interest, Thuillez testified that during the partners' year-end meetings in 1994, 1995 and 1996, they had agreed that the value of each partner's ownership share was $150,000. This evidence was corroborated by the testimony of defendants Donald P. Ford and Scott T. Johnson.

The firm's financial records and tax documents show that the firm performed its part of the agreement by making what were designated as "guaranteed payments" to plaintiff beyond his normal share of the firm's profits. Plaintiff's K-1 tax forms for 1997 through 2000 also reflect guaranteed payments in the amounts as listed on the firm's tax returns for those years in addition to the profit-sharing distribution made in 1997. Furthermore, the final check for such payments was accompanied by a letter from Thuillez stating: "Enclosed find a check in the sum of $1,628.74 which brings to $150,000 our total payments to you." Plaintiff conceded that he never questioned the meaning of this letter or disputed that such payments were made.

Although plaintiff testified that no buyout agreement was reached between Thuillez and himself, and he denied that the partners had previously agreed to $150,000 as a fair valuation of their individual ownership interests, his testimony presented issues of credibility and we defer to Supreme Court's assessments of those issues because it had the advantage of observing the witnesses as they testified (*see Krafchuk v State of New York*, 250 AD2d 962, 964 [1998]; *Austin v Barber*, 227 AD2d 826, 828 [1996]). Accordingly, we cannot say that the court's finding of an enforceable buyout agreement was against the weight of the credible evidence (*see Northern Westchester Profes-*

*sional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]; *Sterling v Sterling*, 21 AD3d 663, 665 [2005]).

To the extent that plaintiff also argues that the buyout did not encompass his share of certain fees other than the tobacco litigation fee, we note that plaintiff failed to assert a claim regarding those fees either in his complaint or at trial. While such a claim would have survived defendants' earlier motion for summary judgment, there is nothing in the record suggesting that it survived the trial where it was stipulated that there would be an accounting as to the value of plaintiff's interest only if Supreme Court found that there had been no buyout agreement.

Finally, plaintiff's contention that Supreme Court failed to comply with the mandate of CPLR 4213 (b) is unavailing. For purposes of our review, the court adequately stated the factual basis for its verdict (*see Lord v State of New York*, 48 NY2d 711, 713 [1979]; *Matter of Jose L.I.*, 46 NY2d 1024, 1025-1026 [1979]; *cf. Novak & Co. v Facilities Dev. Corp.*, 109 AD2d 1013, 1014 [1985]).

Spain, J.P., Kavanagh and Stein, JJ., concur. Ordered that the order and judgment are affirmed, with costs.