Matter of Karakash v Del Valle (2021 NY Slip Op 01484)





Matter of Karakash v Del Valle


2021 NY Slip Op 01484


Decided on March 11, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 11, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta,P.J.,
Judith J. Gische
Jeffrey K. Oing
Lizbeth González
Tanya R. Kennedy, JJ.


Index No. 150934/19 Appeal No. 12572 Case No. 2020-00398 

[*1]In the Matter of Karine Karakash et al., Petitioners,
v
Fidel F. Del Valle etc., et al., Respondents.



 Review of determination of respondents, dated September 27, 2018, which found that petitioners were using their property in violation of the certificate of occupancy and the New York City Department of Buildings rules, and imposed a $1,250 penalty.




Fahringer & Dubno, New York (Erica T. Dubno of counsel), for petitioners.
James E. Johnson, Corporation Counsel, New York (Elizabeth I. Freedman and Scott Shorr of counsel), for respondents.



OING, J. 


In this hybrid CPLR article 78 proceeding, we are asked to determine whether petitioners' use of their property conforms with the applicable Zoning Resolution and their certificate of occupancy, and, if we find that it does not, to declare, nonetheless, that their use is conforming. Subsumed within that issue is whether a subsequently issued summons is duplicative of the first one, requiring its dismissal. Petitioners also seek injunctive relief and assert a claim under 42 USC § 1983.
The commercial property at the heart of this dispute is located at 53-15 Queens Boulevard in Woodside, Queens, and has a building on it, which was built in 1939 and used as an autobody shop and garage since then. The certificate of occupancy, dated April 12, 1979, indicates that the property is in Zoning District C8-1 and Zoning Use Group 16. Zoning District C8 provides for "automotive and other heavy commercial services that often require large amounts of land." Under the New York City Zoning Resolution, "Use Group 16 consists of automotive and other necessary semi-industrial uses," including "Automotive Service Establishments" providing "[a]utomobile, truck, motorcycle or trailer repairs" and "[a]utomotive service stations" (ZR § 32-25[B]). The certificate of occupancy provides the following permitted uses: "Automobile repair shop, office and sales, parking and storage of 10 cars awaiting service, and outdoor gasoline service station[,] and open used car sales."
In 2002, petitioner Karine Karakash (Karine) and her former husband, nonparty Edward Karakash (Edward), bought the property, which currently has on it the commercial establishments petitioners Eddie's High Performance Shop, LLC and Gotham City Garage, LLC. Petitioners describe their business as a general automobile repair shop and New York State inspection station. The business also performs repair and body work on foreign, domestic, classic, and exotic vehicles, including restoration, high performance, and custom work. Petitioners describe their business of customizing vehicles as highly lucrative and allege that their customers are willing to pay top dollar for this specialty work.
On June 29, 2006, the City rezoned the area along Queens Boulevard where the property is located from C8-1 to R7X residential with a C2-3 commercial overlay. This rezoning rendered the use of the property as an automobile repair shop a "legal, non-conforming use." The property continued to be grandfathered as C8-1 zoning and Use Group 16, because there was no change to its certificate of occupancy. Karine became the sole owner of the property after her divorce from Edward in 2016.
In March and June 2017, petitioners purchased four industrial shipping containers and located them on the property. They allege that they intend to use the containers in connection with customizing specialty vehicles and other bodywork. The containers would be the source for metal, structure, and parts for repairs and customized body work.
On August [*2]16, 2017, a New York City Department of Buildings (DOB) inspector went to petitioners' property in response to a complaint and conducted an inspection. The inspector issued a summons (the first summons) to a "Karsh, Edward." The summons charged petitioners with violating ZR § 32-00  "illegal use in commercial district." Its violation details provided: "Premises occupied as 1-story commercial dwelling and occupied as auto repair shop at the time of inspection. Stored 4 industrial shipping containers in parking lot. Containers stored approx. 20 feet in height along with property line as dead storage." The remedy was to "[d]iscontinue illegal use." Petitioners appeared for an OATH hearing on December 5, 2017, and presented evidence in support of dismissing the summons.
The Hearing Officer's decision, dated January 9, 2018, noted that petitioners have "been charged for storing industrial shipping containers in the parking lot in violation of the NYC Zoning Resolution 32-00," that DOB "presented the property profile indicating the property is in general residence district (R7X) with commercial overlay as local service district (C2-3) and photos . . . ," and that petitioners "claimed that they are into automobile repair business and the containers in the premises were transformed into trucks," submitting the certificate of occupancy and photos in support. The Hearing Officer dismissed the summons, finding the DOB inspector's sworn statement not credible and petitioners' testimony and evidence credible. The Hearing Officer concluded that "[t]he presence of the containers conforms to the use of the premises." The City did not appeal the dismissal of this summons.
About seven months later, on March 19, 2018, in response to another complaint concerning the presence of the same shipping containers on the property, a DOB inspector visited the property and issued a summons (the second summons) to "Karine Karakash" for violating Administrative Code of the City of New York § 28-118.3.2. [FN1] The summons detailed the violation as "Occupancy contrary to that allowed by the Certificate of Occupancy or D.O.B. records. At time of inspection observed at exposure #4 (side) four industrial shipping containers stored on lot. Shipping containers are approx. 8 x 35 feet. Us[]age is non-compliant with current C of O . . . dated 4/12/79." The remedy was to "[d]iscontinue illegal use or amend C of O." Petitioners appeared for an OATH hearing on this summons on May 15, 2018.
The DOB submitted the inspector's summons, photographs, and the property's certificate of occupancy as evidence. Petitioners' counsel raised the issue of the prior hearing concerning the presence of the shipping containers on the property and submitted the decision that found that the presence of the shipping containers conformed with the use of the premises. Petitioners also submitted photographs to show the intended purpose of the shipping containers. The Hearing Officer found, "The evidence of record [*3]establishes that the storage containers located on [petitioner's] premises is not contrary to the intended use stated in [petitioner's] Certificate of Occupancy. Therefore, [DOB] has failed to establish that [petitioner] was in violation of the charge at issue." The Hearing Officer dismissed the second summons.
DOB appealed the dismissal of the second summons to the OATH Appeals Unit. It argued that storage of the industrial shipping containers on the property was not a legal accessory use to an automobile repair shop and that the certificate of occupancy explicitly limited the type of stored items on the property to "10 cars awaiting service." DOB further argued that transforming the industrial shipping containers into vehicles did not constitute automobile repair under the certificate of occupancy. DOB claimed that the second summons was not duplicative of the first summons because it named a different respondent and asserted a violation of the certificate of occupancy, unlike the first summons, which charged a violation of the Zoning Resolution.
In opposition, petitioners argued that the second summons was duplicative of the first summons. First, the summonses essentially named the same individuals. Although the respondent named in the first summons was, "Karsh, Edward," petitioners argued that that was incorrect and that the proper respondent should have been petitioner Karine Karakash, who had been the sole owner of the property since 2016, before the first summons was issued. Second, the summonses were for the same property and alleged the same nonconforming use. And, third, petitioners and DOB offered the same evidence at both hearings, and both Hearing Officers found that the use of the property conformed with the Zoning Resolution and the certificate of occupancy. Petitioners also argued that because it failed to timely appeal the first determination adverse to it DOB should not be permitted to circumvent the 30-day requirement for filing an appeal with respect to that summons by pursuing an appeal of the same adverse outcome with respect to the second summons. Regardless, petitioners pointed to the fact that the certificate of occupancy did not prohibit the storage of the shipping containers on the property, and that their use of these containers to customize vehicles was in conformity with the certificate of occupancy and the use of the property as an automobile repair shop.
The OATH Appeals Unit reversed the Hearing Officer's decision to dismiss the second summons. It held that storing the shipping containers on the property violated the certificate of occupancy. It rejected petitioners' argument that their use of the shipping containers to customize vehicles was in conformity with the certificate of occupancy and the use of the property as an automobile repair shop. The OATH Appeals Unit held that the second summons was not duplicative of the first summons, given that the two summonses were issued to different individuals, on different [*4]dates, and addressed different violations.
Petitioners commenced this hybrid CPLR article 78 proceeding seeking to annul this determination. They also seek a judicial declaration "that their use of the [p]roperty to modify vehicles . . . is a continuation of a preexisting nonconforming use" and a permanent injunction enjoining respondents from any further enforcement that would prohibit them from using the property to modify vehicles. In addition, petitioners assert a 42 USC § 1983 cause of action claiming that respondents acted in bad faith and are liable for due process, Commerce Clause, and Equal Protection Clause violations.
Respondents answered the petition and asserted that the proceeding should be transferred to this Court for a substantial evidence review. Respondents also cross-moved to dismiss petitioners' claims under 42 USC § 1983 and for declaratory and injunctive relief. Supreme Court transferred the proceeding to this Court for a substantial evidence review.
The OATH Appeals Unit, inter alia, agreed with respondents' contention that storing the shipping containers on the property was not within the zoning use group listed on petitioners' certificate of occupancy. It rejected petitioners' argument that their intended use of the shipping containers to transform vehicles was an accessory use to their automobile repair shop business. Accordingly, it determined that petitioners' use of the property for storing the industrial shipping containers violated the certificate of occupancy. The record demonstrates that these findings were based on the OATH Appeals Unit's application of the relevant factors and evidence (see Matter of Touro Coll. v City of N.Y. Envtl. Control Bd., 139 AD3d 495 [1st Dept 2016]). Its reasoning and analysis is entitled to deference (see Matter of Karol v New York City Off. of Admin. Trials & Hearings, 190 AD3d 420 [1st Dept 2021]). Consideration of these facts alone supports the conclusion that this determination was supported by substantial evidence (CPLR 7803[4]; see generally 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]). Other issues raised by petitioners do not dictate a different result.
In determining that the second summons was not duplicative of the first one, the OATH Appeals Unit noted that "[t]he initial summons . . . was issued to a different party, on a different date, and cited a different section of law containing different evidentiary requirements." It further found that in the absence of duplicity DOB's failure to appeal the hearing decision for the first summons did not preclude it from appealing the second summons.
"Generally, an NOV [notice of violation] is duplicative of another NOV when each cites the same respondent at the same place of occurrence on the same date of violation on the same factual basis under either the same provision of law or a different provision of law with the same elements of proof" (NYC v 187 Pinehurst Owners Corp., Appeal No. 1300221 [*5][July 25, 2013]).
As a preliminary matter, there is no dispute that the two summonses are for the same location. The finding that the two summonses were issued to two different individuals, however, is arbitrary and capricious. The first summons, dated August 16, 2017, directed to respondent "Karsh, Edward," clearly contains an error. There is no one named "Karsh, Edward" associated with petitioners, and petitioner Karine Karakash has been the sole record owner of the property since 2016, before the first summons was issued. Regardless, petitioner, as the current sole property owner, by appearing and presenting a defense, and waiving all defenses based on service, substituted herself for "Karsh, Edward" (see 48 RCNY 6-09[d][3]).
As to the timing of the summonses, they were issued seven months apart, undermining any claimed duplication. That said, the passage of time is particularly significant in a case like this where petitioners prevailed in their defense on the first summons based upon an intended future use of the shipping containers at the property. The validity of that defense can be the subject of a subsequent summons. Thus, a bright-line time limit on what constitutes duplication under these kind of circumstances should be avoided.
Petitioners argue primarily that although the summonses cite to two different provisions of the law — a Zoning Resolution violation and a certificate of occupancy violation pursuant to Administrative Code § 28-118.3.2 — the same proof and arguments were presented at the hearings for both summonses, namely, the certificate of occupancy, photographs depicting storage of the shipping containers on the property, the argument that the shipping containers would be transformed into trucks, and the counterargument that the storage was not a permitted use. They contend that this analysis is sufficient to demonstrate the duplicative nature of the summonses. The argument is unavailing.
In NYC v Calderone, Appeal No. 1700835 (October 5, 2017), the offending conduct concerned a second vehicle parked in a driveway. DOB issued two summonses, one based on a Zoning Resolution violation and the other based on a certificate of occupancy infraction. The OATH Appeals Unit held that the second vehicle violated the Zoning Resolution's prohibition on obstructing a driveway and that the same vehicle violated the certificate of occupancy, which limited residence parking to one vehicle. As such, the OATH Appeals Unit determined "[t]hat [simply because] the same vehicle established both violations does not render the charges duplicative" (id.).[FN2]
Here, as in Calderone, the same body of evidence is used to prove two different violations, a violation of the Zoning Resolution, which covers the permitted uses and businesses within a specific area, and a violation of the certificate of occupancy, which applies specifically to the property, and describes the legal occupancy and use of that property. Moreover, the remedy for the two summonses [*6]is not the same. The first summons demanded that petitioners discontinue the illegal use, while the second summons provided for alternative remedies — discontinue illegal use or amend the certificate of occupancy. Accordingly, the OATH Appeals Unit's finding that the second summons was not duplicative of the first summons was not arbitrary and capricious.
As a final argument in support of annulling the OATH Appeals Unit's determination, petitioners rely on the doctrines of res judicata and collateral estoppel. They contend that the first summons, in which they prevailed and the City failed to appeal, bars the second summons. We find, however, that we are procedurally precluded from considering the res judicata/collateral estoppel argument.
Section 3-14 of the Rules of the City of New York, title 48 (OATH), entitled "Claims of Prior Adjudication," provides:
"Whenever a party claims that a summons was previously adjudicated, the hearing officer must allow both parties to present all relevant evidence on all the issues in the case, including the claim of prior adjudication. If a party has raised a claim of prior adjudication, the hearing officer must not decide such claim, but must preserve the claim for the purposes of subsequent appeal to the Appeals Unit, a panel of Board members, or the Board pursuant to § 3-15. If, on appeal, a party properly raises and preserves a claim of prior adjudication, the Appeals Unit will review the records of the first and any subsequent hearings in order to assist the panel or Board in determining the claim of prior adjudication. In deciding the claim, the panel or the Board will consider the interests of justice and public safety"
(48 RCNY 3-14; see Drobenko Bros Realty Inc., Appeal No. 140006 [November 20, 2014] [addressing and declining to apply res judicata pursuant to 48 RCNY 3-14]). Thus, pursuant to this section, preclusive effect of prior adjudications must be considered and determined at the administrative proceedings prior to judicial review.[FN3] Petitioners' failure to preserve and litigate their res judicata/collateral estoppel argument before the Hearing Officer or the OATH Appeals Unit precludes our review.
We now address petitioners' declaratory judgment claim, wherein they assert that their storage and intended use of the shipping containers, namely, to customize vehicles, are consistent with the applicable Zoning Resolution and the certificate of occupancy. As noted above, the zoning district in which the property is located was rezoned in June 2006. Accordingly, petitioners' use of the property as an automotive business since that rezoning was grandfathered, and was deemed a legal, nonconforming use. Respondents, relying on Town of Virgil v Ford (160 AD2d 1073 [3d Dept 1990]), argue that in order for petitioners to prevail they had to demonstrate that they were using shipping containers prior to the June 2006 rezoning, that such use was legal, and that the use continued uninterrupted. Respondents [*7]then point to the fact that petitioners failed to present any evidence to satisfy these three conditions. Indeed, they note that "petitioners admitted . . . that they acquired the shipping containers in 2017, eleven years after the rezoning."
In Town of Virgil, the Third Department stated the proposition that "[a] party who raises a claim of a nonconforming use must establish that the use was legally created" (160 AD2dat 1074 [internal quotation marks omitted]). Although the owner's use of the property in that case to store abandoned vehicles was not lawful because the use violated a 1969 town ordinance prohibiting such use, the Court further held that the owner could not claim a legal, nonconforming use, given its failure to establish that such use occurred prior to the enactment of the ordinance (id.).
Petitioners, admittedly, cannot demonstrate that they were using shipping containers prior to the June 2006 rezoning, that such use was legal, and that the use continued uninterrupted. Thus, at first blush, Town of Virgil would compel dismissal of petitioners' declaratory judgment claim. That is not the case. Here, unlike in Town of Virgil, petitioners argue that the presence of the shipping containers is a legal, nonconforming use because their business of customizing vehicles is an accessory to the existing use of the property as an automotive repair and body shop and that these shipping containers will be used in connection with the customization process. Petitioners did not, however, advance the accessory use argument in their opening brief, and merely responded in their reply brief that the argument was raised before the OATH Appeals Unit only after respondents asserted that they had abandoned the argument. We find that petitioners have abandoned this argument (see McHale v Anthony, 41 AD3d 265, 266-267 [1st Dept 2007]). Nonetheless, even if we were to consider the argument, we would find that the claim should be dismissed.
Petitioners argued before the OATH Appeals Unit that the storage and intended use of the shipping containers were legal, nonconforming uses of the property because such uses amounted to an "accessory use" under Administrative Code § 27-232, namely, that both purposes were incidental to the principal use or occupancy of the property, i.e., automotive repair and customization services. They also noted that a similar provision exists under ZR § 12-10 (use is accessory where it is "on the same zoning lot as the principal use to which it is related . . . clearly incidental to, and customarily found in connection with, such principal use."). In order to bolster their "accessory use" claim, they pointed to the fact that they had been operating an automotive repair and service facility and that the shipping containers would be customized into motor vehicles. Under these circumstances, petitioners argued that they were entitled to a declaration that their storage and intended use of the shipping containers were accessory uses [*8]to their vehicle customization business, and, as such, were legal, nonconforming uses under the applicable Zoning Resolution and the certificate of occupancy.
The principle is well settled that a declaratory judgment is discretionary (see Bower & Gardner v Evans, 60 NY2d 781, 782 [1983]). Under the circumstances of this matter, it is not the proper vehicle for the relief petitioners seek (see Young Men's Christian Assn. v Rochester Pure Waters Dist., 37 NY2d 371, 375 [1975]). Respondents are tasked with the responsibility to resolve the complicated issues that arise in the enforcement of the rules governing the use, occupancy, and safety of buildings in New York City. This proceeding implicates their expertise in the interpretation and application of their own regulatory procedures concerning the applicable Zoning Resolution and petitioners' certificates of occupancy, which include consideration of intricate land use and development issues. Were we to issue the declaration that petitioners seek, we would countenance circumvention of the administrative process for amending a certificate of occupancy or the Zoning Resolution. Moreover, there would be a needless usurpation of respondents' role, which would deprive them of the opportunity to consider whether there should be an amendment at all. Indeed, the OATH Appeals Unit rejected petitioners' accessory use argument when it determined that the shipping containers were not incidental to their principal business of automotive repair and service. Based on these circumstances, that determination is entitled to deference. That said, as aptly noted by respondents, petitioners' recourse would be to file an application to amend the certificate of occupancy. An adverse determination would be subject to a CPLR article 78 review with the benefit of a developed administrative record. Accordingly, respondents' cross motion to dismiss the declaratory judgment claim is granted, and the claim is dismissed.
Turning to the cause of action premised on respondents' alleged violation of 42 USC § 1983, petitioners allege that respondents are engaging in selective enforcement by targeting and harassing petitioners while similarly situated businesses in the area have not been targeted.[FN4] We note that preservation of this claim is not required where respondents' action is challenged as either unconstitutional or beyond its authority (see Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978]). Petitioners' selective enforcement claim, however, fails. To prevail on that claim, petitioners must demonstrate that they were selectively treated "compared with others similarly situated" and that "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person" (see Jordan v New York City Bd. of Elections, 816 F Appx 599, 603-604 [2d Cir 2020], quoting Diesel v Town of Lewisboro, [*9]232 F3d 92, 103 [2d Cir 2000]).
Here, the comparators set forth in the verified amended petition are not comparable to petitioners' property. One property is not an automobile repair shop, and the other properties did not have violations for storing shipping containers in their violation history. Further undermining this claim is the record evidence demonstrating that petitioners' property was not the only property cited for storing containers in violation of a certificate of occupancy. Accordingly, we grant respondents' cross motion to dismiss this claim, and the claim is dismissed.
Given our dismissal of the declaratory judgment and section 1983 claims, petitioners' cause of action for injunctive relief has no legal basis, and it is dismissed (see Weinreb v 37 Apts. Corp., 97 AD3d 54, 58-59 [1st Dept 2012]).
Accordingly, the determination of respondents, dated September 27, 2018, which found that petitioners were using their property in violation of the certificate of occupancy and the New York City Department of Buildings rules, and imposed a $1,250 penalty, should be confirmed, the petition denied, and this hybrid proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court, New York County [Carol R. Edmead, J.], entered October 30, 2019) dismissed, without costs.
The determination of respondents, dated September 27, 2018, confirmed, the petition denied, and this hybrid proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court, New York County [Carol R. Edmead, J.], entered October 30, 2019) dismissed, without costs.
Opinion by Oing, J. All concur.
Acosta, P.J., Gische, Oing, González, Kennedy, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 11, 2021



Footnotes

Footnote 1: We note that nine months later DOB issued a third summons, dated December 3, 2018, concerning these shipping containers. This summons is identical to the second summons. We further note that this summons brings the total number of summonses concerning these shipping containers to three in a 16-month span.

Footnote 2: There was no issue as to the other factors affecting whether the two summonses were duplicative, i.e., date, person, and property.

Footnote 3: We note that where judicial review is warranted the Court of Appeals has cautioned careful application of these preclusive principles to administrative proceedings:
"Before we will apply res judicata to an administrative decision . . . 'it is necessary to determine whether to do so would be consistent with the function of the administrative agency involved, the peculiar necessities of the particular case, and the nature of the precise power being exercised.' Consequently, the rule should give conclusive effect to agency determinations 'only if such application is consistent with the nature of the particular administrative adjudication'" (Matter of Josey, 9 NY3d 386, 390 [2007] [citations omitted]).

Footnote 4: Petitioners have abandoned their remaining state and federal constitutional claims by failing to pursue them on appeal (see McHale v Anthony, 41 AD3d at 266-267).