Town of Nassau v Nalley (2024 NY Slip Op 02349)

Town of Nassau v Nalley

2024 NY Slip Op 02349

Decided on May 2, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 2, 2024

535723
[*1]Town of Nassau, Respondent,
v
Stephen B. Nalley, Individually and as Executor of the Estate of Barbara Secor, Deceased, Appellant.

Calendar Date:March 26, 2024

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, McShan and Mackey, JJ.

Frank T. Mahady, Albany, for appellant.
Miller, Mannix, Schachner & Hafner, LLC, Glens Falls (Brian Reichenbach of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (Patrick J. McGrath, J.), entered June 13, 2022 in Rensselaer County, upon a decision of the court in favor of plaintiff.
Defendant is the owner, occupant and manager of four parcels of property located at 2788 US Route 20, 3036 US Route 20, Lords Hill Road and Mead Road in the Town of Nassau, Rensselaer County.[FN1] All four parcels of property are zoned rural residential under plaintiff's 2011 zoning law. In 1989, plaintiff enacted Local Law No. 1, entitled "the Junk Yard Ordinance," declaring junkyards to be a menace to the health, safety and general welfare of the community and prohibiting any person, partnership or corporation from conducting a junkyard business without first obtaining a license. In 2011, plaintiff adopted a zoning law which prohibited junkyards [FN2] in rural residential zones. In 2018, plaintiff's code enforcement officer began documenting defendant's use of the four properties as junkyards and served several [FN3] notices of violation upon defendant.
When defendant did not cease operation of the junkyards, plaintiff commenced this action [FN4] seeking to permanently enjoin him from doing so. Defendant answered, asserting various affirmative defenses, including, among other things, preexisting nonconforming use and selective enforcement. Following a nonjury trial,[FN5] Supreme Court permanently enjoined the continued use of the properties as junkyards and imposed monetary penalties. Defendant appeals.
"In reviewing a determination made after a nonjury trial, the power of this Court is as broad as that of the trial court, and this Court may render the judgment it finds warranted by the facts, bearing in mind that in a close case, the trial judge had the advantage of seeing the witnesses and hearing the testimony" (Matter of Jewett, 145 AD3d 1114, 1116 [3d Dept 2016] [internal quotation marks, ellipsis and citations omitted]; see Baba-Ali v State of New York, 19 NY3d 627, 640 [2012]). Defendant contends that Supreme Court erred in rejecting his claim that the prior nonconforming use of the properties allowed his continued operation of the properties as junkyards, notwithstanding the 2011 prohibitive zoning ordinance. "It is the law of this state that nonconforming uses . . . , in existence when a zoning ordinance is enacted, are, as a general rule, constitutionally protected and will be permitted to continue, notwithstanding the contrary provisions of the ordinance. However, the owner must establish that the allegedly pre-existing use . . . was legal prior to the enactment of the prohibitive zoning ordinance which purportedly rendered it nonconforming" (Matter of East End Holdings, LLC v Village of Southampton Zoning Bd. of Appeals, 135 AD3d 860, 861 [2d Dept 2016] [internal quotation marks and citations omitted]; see Town of Virgil v Ford, 160 AD2d 1073, 1074 [3d Dept 1990]).
Pursuant to plaintiff's 1989 Local Law No. 1, an owner or occupant of property could not conduct a junkyard business without first [*2]obtaining a license from plaintiff. In 2011, plaintiff's zoning law prohibited junkyards in rural residential zones. Section 4.1 of plaintiff's zoning law pertains to a nonconforming use of property and its continuation. Section 4.1 D, the so called "grandfather" clause, allows the continuation of lawfully established (all approvals and permits obtained) existing nonconforming uses. Testimony at trial by plaintiff's code enforcement officer, defendant and defendant's witnesses, as well as numerous photographs admitted into evidence, established that all four properties are located in a rural residential zone; and that the properties located at 3036 US Route 20, Mead Road and Lords Hill Road were littered with hundreds of abandoned and unregistered vehicles, equipment, household appliances and other refuse and were operating as junkyards.[FN6] As such, the issue here distills to whether defendant established a legal preexisting nonconforming use.
With respect to 3036 US Route 20 and Mead Road, defendant failed to produce a license or permit allowing him or any previous owner to operate a junkyard. Nor did defendant seek to grandfather his allegedly legal preexisting nonconforming use of these properties prior to this action. As to the Lords Hill Road property, defendant provided, as purported proof of the lawful use of this property, a 1987 license to dismantle vehicles issued by plaintiff and Department of Motor Vehicles permits to dismantle vehicles valid through 2005. These documents were issued to defendant's father as the prior owner of the property. However, plaintiff's father was subsequently permanently enjoined from operating a junkyard on this property in 2007, well before the enactment of the 2011 zoning law (see Town of Nassau v Nalley, 52 AD3d 1013, 1015 [3d Dept 2008], lv dismissed 11 NY3d 771 [2008]). Moreover, because a Department of Motor Vehicles dismantler's license may be issued to an entity who does not comply with local laws related to zoning, the issuance of such license "shall not be a defense to any action brought as a result of [a] violation of local law" (15 NYCRR 81.2 [d]). As a legal nonconforming use "may not be established where, as here, the existing use of the land was commenced or maintained in violation of a zoning ordinance" (Matter of Marino v Town of Smithtown, 61 AD3d 761, 762 [2d Dept 2009]; see Town of Virgil v Ford, 160 AD2d at 1074), we find no basis to reverse Supreme Court's factual findings that defendant did not have a legal preexisting nonconforming use (see Town of Kinderhook v Slovak, 72 AD3d 1240, 1241 [3d Dept 2010]; Chase Manhattan Bank v Douglas, 61 AD3d 1135, 1137 [3d Dept 2009]).
Defendant next asserts that plaintiff engaged in selective enforcement of the zoning law, claiming that plaintiff did not enforce the zoning law against other similarly situated property owners who were also accumulating vehicles and other debris on their property. "To establish a claim for a violation of equal protection [*3]in the context of selective enforcement, a [defendant] must demonstrate that (1) he or she, compared with others similarly situated, was selectively treated, and (2) such selective enforcement was based upon impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure him or her" (Pirro v Board of Trustees of the Vil. of Groton, 203 AD3d 1263, 1268-1269 [3d Dept 2022] [internal quotation marks and citations omitted]; see Town of N. Elba v Grimditch, 131 AD3d 150, 160-161 [3d Dept 2015], lv denied 26 NY3d 903 [2015]). There is nothing in the record from which it can be inferred that plaintiff singled defendant out with a malicious or bad faith intent to injure him. Undermining defendant's claim is plaintiff's code enforcement officer's testimony that he works part time, does not have any staff and has a limited budget to enforce the code; that he served notices of violations on other property owners; and that he proceeded against defendant because he was the Town's most egregious violator (see Matter of Karakash v Del Valle, 194 AD3d 54, 67 [1st Dept 2021]). Accordingly, defendant's selective enforcement claim fails (see Pirro v Board of Trustees of the Vil. of Groton, 203 AD3d at 1269; Town of N. Elba v Grimditch, 131 AD3d at 161).
We are unpersuaded by defendant's contention that Supreme Court abused its discretion in granting plaintiff's request for a permanent injunction. "The law is by now well settled that an injunction is an appropriate remedy to prevent continuing violations of zoning laws" (Town of Solon v Clark, 97 AD2d 602, 602 [3d Dept 1983] [citation omitted]; see Matter of 1640 State Rte. 104, LLC v Town of Ontario Planning Bd., 207 AD3d 1101, 1105 [4th Dept 2022]). "Where a town seeks to enforce its building and zoning laws, it is entitled to a permanent injunction upon demonstrating that the party sought to be enjoined is acting in violation of the applicable provisions of local law" (Matter of 1640 State Rte. 104, LLC v Town of Ontario Planning Bd., 207 AD3d at 1105 [internal quotation marks and citations omitted]). Plaintiff established its entitlement to a permanent injunction by demonstrating defendant's ongoing violations of the 2011 zoning law (see Matter of 1640 State Rte. 104, LLC v Town of Ontario Planning Bd., 207 AD3d at 1105; Town of Nassau v Nalley, 52 AD3d at 1015).
We do, however, agree with defendant's assertion that Supreme Court erred in its calculation of the monetary penalties. Specifically, the monetary penalties imposed against his mother should have abated upon her death, as the civil penalties are payable to a municipality and are penal in nature (see Matter of Elm Realty v Office of Rent Control, 54 NY2d 650, 652 [1981]; Matter of Martindale v Novello, 13 AD3d 761, 763 [3d Dept 2004]). Additionally, pursuant to the violation notices, in the event of defendant's nonaction, fines were to be imposed 30 days after [*4]receipt of the notice. Supreme Court erred by calculating the fees as of the date of service of the notice of violation. Therefore, we abate $158,700 in civil penalties attributed to the 3036 US Route 20, Mead Road and Lords Hill Road properties and additionally reduce that aspect of the judgment by $9,000 (for a new total of $98,900), and reduce the civil penalty attributed to the 2788 US Route 20 property by $6,000 (for a new total of $197,600), resulting in a new total judgment of $296,500. To the extent not specifically addressed herein, defendant's remaining contentions have been considered and determined to be without merit.
Clark, J.P., Aarons, McShan and Mackey, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reducing the civil penalties attributed to the 3036 US Route 20, Mead Road and Lords Hill Road properties to $98,900 and reducing the penalty attributed to the 2788 US Route 20 property to $197,600, for a total penalty of $296,500; and, as so modified, affirmed.

Footnotes

Footnote 1: The property located at Mead Road was initially purchased by defendant's father in 1975. Defendant's father purchased 3036 US Route 20 in 1995. Defendant's mother testified that she is the owner of Mead Road and plaintiff submitted a title search confirming that she acquired the property in 2001. Plaintiff submitted a copy of a deed evidencing that the Lords Hill Road property was transferred to defendant's mother in December 2008. In 2014, defendant's father passed away and defendant began managing the properties, including his mother's property. Defendant also testified that at the commencement of the action, he was the owner of 2788 and 3036 US Route 20. Additionally, plaintiff provided title searches confirming that defendant inherited his father's property.
Footnote 2: A junkyard is defined in article 12 of the 2011 zoning law as "[a]n area of land with or without buildings used for or occupied by a deposit, collection or storage, outside a completely enclosed building, of used or discarded materials, such as waste paper, rags, or scrap metal, or used building materials, house furnishings machinery or parts thereof, or more than two (2) indoor household appliances or more than three (3) unregistered vehicles."
Footnote 3: Plaintiff served six notices of violation and orders to remedy dated November 7, 2018 upon defendant, one for each property owned or used by him; prior to trial the parties stipulated to remove two properties from this action. Plaintiff also served two notices dated November 7, 2018 upon defendant's mother for the two parcels owned by her.
Footnote 4: Plaintiff amended its complaint in November 2019, naming defendant as owner of 2788 and 3036 US Route 20, in place and stead of his father.

Footnote 5: In September 2021, after the trial and before Supreme Court entered its order, defendant's mother passed away and defendant was substituted in as executor of his mother's estate.

Footnote 6: The property located at 2788 US Route 20 contained only two unregistered vehicles and a lawnmower. Thus, this property did not meet the definition of a junkyard. The property was in violation of section 5.11-1 of the 2011 zoning law for the storage of two unregistered vehicles outside of a fully enclosed structure on any given lot.